### KEYSER et al. v. MILTON.

(Circuit Court of Appeals, Fifth Circuit. January 19, 1916.)

No. 2821.

1. HUSBAND AND WIFE &⇒98—NATIONAL BANKS—LIABILITIES OF STOCKHOLDERS.

Notwithstanding the disabilities of married women under the laws of Florida, a married woman, acquiring stock in a national bank by gift from her husband and collecting the dividends thereon, became, like other stockholders, liable for the debts of the bank which it failed to pay to the extent of her holdings, under Rev. St. § 5151, making the shareholders of national banking associations individually responsible equally and ratably, and not one for another, for all debts of the association to the extent of the amount of their stock in addition to the amount invested in such shares.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 128½; Dec. Dig. &⇒98.]

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** HUSBAND AND WIFE ⊙⟹242—LIABILITY OF MARRIED WOMEN—EXECUTION AGAINST SEPARATE PROPERTY.

Const. Fla. art. 11, § 1, provides that all property of a wife, owned by her before marriage or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and shall not be liable for the debts of her husband without her consent, given by some instrument in writing executed according to the law respecting conveyances by married women. Section 2 provides that a married woman's separate real or personal property may be charged in equity and sold, or the rents and profits sequestrated, for the purchase money thereof, for money or thing due upon any agreement by her in writing for the benefit of her separate property, or for the price of any property purchased by her, or labor and material used with her knowledge or assent in the construction of buildings, or repairs or improvements upon her property, or for agricultural or other labor thereon with her knowledge and consent. Section 3 provides that the Legislature shall enact such laws as shall be necessary to carry that article into effect. Gen. St. Fla. 1906, § 1600, makes judgments a lien upon the real estate of the defendant in the county where rendered; and section 1618 provides that lands, etc., shall be subject to levy and sale under execution. *Held*, that article 11, § 2, merely provides for the enforcement of certain obligations in a court of equity, and does not prohibit the enforcement of other obligations, and where a valid judgment is recovered against a married woman in a common-law action, such as a judgment on her statutory liability as a stockholder in a national bank, the judgment is enforceable by execution upon her separate property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 505; Dec. Dig. ⊙⟹242.]

Appeal from the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Suit by Mary C. Keyser and husband against W. H. Milton, as receiver of the First National Bank of Pensacola, Fla. From a judgment dismissing the bill, plaintiffs appeal. Affirmed.

Francis B. Carter, of Pensacola, Fla., for appellants.

William H. Watson and Samuel Pasco, Jr., both of Pensacola, Fla., for appellee.

Before PARDEE and WALKER, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. This case comes before the court here on an appeal from the decision of the District Court for the Northern District of Florida, dismissing a bill brought by the appellants against the appellee.

The purpose of the bill was to enjoin Milton, as receiver, from advertising or selling, or attempting to advertise or sell, certain property described in the bill, or any of the property of Mary C. Keyser, under an execution issued upon a judgment rendered against her on an assessment made by the Comptroller of the Currency, following the suspension of the First National Bank of Pensacola; the said Mary C. Keyser, being, at the time of the suspension of said bank, the owner of four fully paid shares, of the par value of $100 each, of the capital stock of the bank, the shares having been purchased in her name by

her husband, subsequent to the year 1907, which stock she accepted, and on which she collected divers dividends.

The receiver, in seeking to collect this assessment, had brought suit against Mrs. Keyser and her husband in the District Court for the Northern District of Florida, and obtained judgment in that court against Mrs. Keyser for the sum of $406.40, being the principal and interest of said assessment.

Mrs. Mary C. Keyser was the owner in fee simple of certain real estate in Escambia county, Fla., and the bill alleges that the receiver has caused the marshal for said district, under an execution issued upon this judgment, to levy on the property described, and has directed the marshal to advertise and sell the property for the satisfaction of the judgment, and that the marshal will proceed to do so immediately unless restrained by the court; that the liability of Mary C. Keyser is a statutory liability for the debts of the bank, and none other, said liability arising under the banking laws of the United States of America, and was not for the purchase money of any property purchased by the said Mary C. Keyser, nor was it due upon any agreement made by her in writing for the benefit of her separate property, nor was it for labor or material used in the construction of buildings, repairs, or improvements upon any property of the said Mary C. Keyser, nor for agricultural or other labor bestowed thereon, nor was it for purchase money of the property upon which the levy of said execution has been had, or any other property now owned or ever owned by the said Mary C. Keyser.

The only question made in this case is whether or not the separate statutory property of a married woman in Florida is subject to levy and sale under execution in a common-law suit. No question is made here, and none could be made, as to the right of the receiver to have had the judgment he obtained against Mrs. Keyser. That question was fully settled in the case of Christopher et al. v. Norvell, 134 Fed. 842, 67 C. C. A. 438, in this court, which judgment was affirmed by the Supreme Court in Christopher v. Norvell, 201 U. S. 216, 26 Sup. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740; the Supreme Court following a decision it had formerly made in the case of Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531. The headnotes in the case of Christopher v. Norvell, supra, in the Supreme Court, will show, we think, what was decided there. Those headnotes are as follows:

"Although in a limited sense there is an element of contract in becoming a shareholder of a national bank, the liability for debts of the institution is not contractual, but is based on the provisions to that effect in the national banking law. The government creating the bank has prescribed the terms upon which ownership of its shares can be acquired, and only those are exempted from liability who are specially described in the statute; nor can any shareholders be exempted from such liability by a state statute.

"Under section 5151, Rev. Stat., a married woman residing in Florida, who has inherited stock in a national bank, which has been transferred to her and on which she has received and accepted dividends, is subject to a personal judgment for an assessment of the Comptroller, notwithstanding that under the laws of Florida a married woman cannot enter into a contract.

"Nothing in the law of Florida incapacitates a married woman in that state from becoming the owner, by bequest or otherwise, of stock in a national bank.

How and from what property such a judgment shall be satisfied not involved or decided in this action."

In each of these cases, however, the opinion is concluded with the statement that the court expresses no opinion as to what property may be reached in the enforcement of the judgment.

[1] It will be seen that it was held in the decisions referred to above that there is nothing to prevent a married woman from becoming a shareholder in a national bank, and that, while "in a limited sense there is an element of contract in becoming a shareholder of a national bank, the liability for the debts of the institution is not contractual, but is based on the provisions to that effect in the National Banking Law." This was not, therefore, a contractual obligation, strictly speaking, on the part of Mrs. Keyser. Her husband gave her the shares of stock in the bank, and she received the stock and collected dividends thereon, and became, therefore, like any other shareholder, liable under the statute for the debts of the bank which it failed to pay, to the extent of her holdings.

Her liability to a judgment being, therefore, unquestionable, the only question here is the right to subject property of hers, standing in her name in fee simple, in Florida, to the judgment.

[2] The main contention of counsel for Mrs. Keyser, as we understand it, is based on article 11 of the Constitution of Florida, which is as follows:

"Section 1. All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women.

"Sec. 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent.

"Sec. 3. The Legislature shall enact such laws as shall be necessary to carry into effect this article."

The purpose of the first section of this article undoubtedly was to make of the property of a wife her separate property, and to prevent it being subject to the debts of the husband, or used by him except with her consent in writing, as therein provided. The main contention, however, is that the second section of this article, in stating with what a married woman's separate real and personal property may be charged in equity and sold for, excludes its being charged and sold other than in a court of equity and charged and sold for any liability other than those named therein.

In the opinion of the Supreme Court, by Mr. Justice Harlan, in Christopher v. Norvell, supra, after referring to this constitutional provision and quoting it, this is said:

"Recurring to the provisions in the statute and Constitution of Florida, it is clear that they do not incapacitate a married woman in that state from becoming the owner by bequest or otherwise of stock in a national banking association. On the contrary, it seems that all property, real and personal, owned by a married woman before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase, is her separate property. Nevertheless, it is said, by the settled course of decisions in that state a married woman cannot bind herself personally by contract at law or in equity, or by becoming a partner, or by making a promissory note. Dollner v. Snow, 16 Fla. 86; Hodges v. Price, 18 Fla. 342; Goss v. Furman, 21 Fla. 406; De Graum v. Jones, 23 Fla. 83 [6 South. 925]; Randall v. Bourgardez, 23 Fla. 264 [2 South. 310, 11 Am. St. Rep. 379]. But those cases are not in point here; for, in each of them, the personal liability attempted to be imposed upon the married woman arose *entirely* out of contract, express or implied, on her part, and not by force of any statute. The argument made in this case in behalf of Mrs. Christopher assumes that the liability sought to be fastened upon her arises wholly out of contract; that is, out of an implied obligation, at the time her name was placed on the registry of shares and she received dividends, to contribute to the extent of the value of such shares to the payment of the debts of the bank. But that implied obligation, although contractual in its nature, could not, standing alone, be made the basis of this action. Without the statute she could not be made liable individually for the debts of the bank at all. No implied obligation to contribute to the payment of such debts could arise from the single fact that she became and was a shareholder."

There is nothing in the laws of the United States on the subject of the enforcement of liabilities of shareholders in national banks to prevent subjecting the property in question here to the execution in favor of the receiver. Rev. St. U. S. § 5151.

Coming to whether there is anything in the laws of Florida to prevent the levying and enforcement of this execution against land held by her in fee simple, as stated in the bill, we think, first, that under the decisions of the Supreme Court of Florida there is nothing whatever in article 11 of the Constitution to prevent levy upon and sale of the property in question.

The General Statutes of Florida of 1906, § 1600, provides:

"Every judgment at law (and decree in equity) which shall be entered in any of the circuit courts of this state shall create a lien and be binding upon the real estate of the defendant in the county where rendered."

Section 1618 provides that:

"Lands and tenements, goods and chattels, equities of redemption in real and personal property, and stock in corporations, shall be subject to levy and sale under execution."

There is no provision in the statutes of Florida, so far as we know, or that has been called to our attention, which prohibits the sale of the separate property of a married woman under an execution based upon a judgment regularly entered against her.

A number of decisions of the Supreme Court of Florida are brought to our attention. One of them is the case of Micou v. McDonald, 55 Fla. 776, 46 South. 291. In this nothing whatever was decided, except that the case there made by a bill in equity was not such as to charge a married woman's separate property under section 2 of article 11 of the Constitution of Florida, and the bill was dismissed for this reason.

Another case cited is King v. Hooton, 56 Fla. 805, 47 South. 394. This was similar to the Micou Case, supra, and was a suit by a broker for commissions.

In the case of Graham v. Tucker, 56 Fla. 307, 47 South. 563, 19 L. R. A. (N. S.) 531, 131 Am. St. Rep. 124, also cited, the question was the liability of a married woman for a tort. The headnote of the case sufficiently expresses what was decided. The headnote is as follows:

"A married woman, the owner of statutory separate real estate. upon which is located a swimming pool and bathhouses, conducted by the husband and wife as a public resort, is sued jointly with her husband for damages in tort by a party who was injured while lawfully using said premises, by his feet slipping and falling on his left leg upon the projecting points of planks alleged to have been negligently left uneven. *Held*, that under the Constitution and laws of Florida, under the circumstances stated, the married woman is not liable in an action of tort."

In the case of Lerch et al. v. Barnes, 61 Fla. 672, 54 South. 763, the question is mainly upon the rights and powers of a married woman, created a free dealer under the statutes of Florida, and is a discussion of the provisions of article 11 of the Constitution of Florida referred to. In the opinion in that case, however, it is said:

"Article 11 of the Constitution of 1885 relates to married woman's property. By the first section it is provided that 'all property, real and personal, of a wife,' etc. [quoting the section as given above]. This section radically changes her common-law relation to her property."

The second section is then quoted, and it then proceeds:

"The third section provides that the Legislature shall enact such laws as shall be necessary to carry into effect this article. These are the only provisions of the Constitution relating to the subject.

"It will be observed that the first section contains no limitations upon the power which might be conferred on her by the Legislature of disposing of her separate property, except that it is exempt from liability for the debts of her husband, without her consent given in some instrument in writing, executed according to the respective conveyances by married women. The second section gives to the court of equity exclusive jurisdiction of certain kinds of obligations which she may have when there is an attempt to enforce their payment from her separate property. Jurisdiction of these, therefore, cannot be conferred by the Legislature on a court of law. Micou v. McDonald, 55 Fla. 776, text 780, 46 South. 291. Otherwise than as thus indicated the Constitution contains no limitations upon the legislative power in the making of laws dealing with the contractual rights which it may confer upon married women, and with their control and disposition of separate property. These matters are left by the Constitution to legislative action and control. A married woman is authorized to dispose of her property by will (section 2270, Gen. Stats. of 1906), to make sales and conveyances of her property, her husband joining her (sections 2590 and 2460, Id.), to bring suits on actions for or concerning. her real estate without joining her husband or next friend (section 2592. Id.), and she is allowed her own earnings (section 2593, Id.). These, and perhaps others, are all radical statutory departures from the common law, removing her common-law disabilities to the extent that they go, and permitting voluntary action and liability on her part as to her separate property. It has never been held that these statutes are unconstitutional."

Under this decision it is clear that section 2 of article 11 of the Constitution does not have the broad effect claimed for it by counsel for Mrs. Keyser; that is, that it controls absolutely and entirely as

to the liability of married women enforceable against her separate statutory property. We think this answers the contention that section 2 of this article 11 is a limitation on the power of the Legislature, and prohibits what is not therein expressed, or, in other words, that the instances mentioned in this section are the only ones in which her separate property may be subjected in any way, and that must be in a court of equity.

In Florida Citrus Exchange v. Grisham, 65 Fla. 46, 61 South. 123, attention is called in the opinion to the language of this statutory provision, article 11, in this way:

"The Constitution has thus vested her with the 'property' in her separate estate, instead of the mere *title* thereto, which only she enjoyed prior to the Constitution of 1868, of which our present Constitution is an amendment. May the Legislature against the will of the wife say to her that the husband shall have absolute dominion over her 'property'? To so hold, it seems to us, would cut down the larger word 'property' to the narrow word 'title,' and say to the makers of the Constitution, 'You were ignorant of the meanings of the two words; the change you made was a thoughtless one, and we shall again enthrall the wife, however skillful and competent she may be in matters financial, under the yoke of the husband, however incompetent in such matters, or controlled by his appetite for strong drink, or gambling or other dissipations."

We mention this to show to what extent, in the opinion of the Supreme Court of Florida, this article of the Constitution went in conferring rights on married women.

The last Florida case to which our attention has been called (Drake v. March, 66 Fla. 598, 64 South. 268) simply holds that:

"A personal decree or judgment against a married woman for her husband's debts cannot * * * be enforced against her separate property, * * * without her consent duly given as the Constitution requires." 

Other cases cited by counsel for appellant, while interesting, we consider not controlling here, in view of the construction which we think has been placed upon the article of the Constitution of Florida relied upon in argument by counsel for the appellants. So far as we can ascertain by an examination of the statutes of Florida and the decisions of the highest court of the state, there is nothing to help the appellants if we give the article of the Constitution in question the construction that it should have, and the construction which we think has been given it by the Supreme Court of Florida, namely, that it does not deal otherwise with the rights of a married woman than to provide that certain obligations may be enforced against her in a court of equity, and that, outside of that, there is nothing to prevent legislative action. If this article of the Constitution is not conclusive as to what may be enforced against a married woman's separate property, if it does not prohibit anything being enforced against it except such as therein expressed, then there is no reason why the execution in this case should not be enforced against the appellants' property.

The judgment here is, as has been stated, a perfectly valid and legal judgment. This has not been questioned, and certainly cannot be in view of the decisions referred to herein. The sole question is: Can this judgment be enforced by execution duly issued and levied upon

Mrs. Keyser's separate statutory property, property which she holds in fee simple in her own name? We believe that it can, and are therefore of opinion that the bill seeking to enjoin the enforcement of this execution was properly dismissed in the District Court.

The judgment of the District Court is affirmed.