COWART, Judge.
This case involves a determination of the physical extent of a homestead at the time of the homesteader’s death.
W. J. Newman died testate[1] on January 7, 1969. Up to the time of his death, he lived as the head of a family consisting of himself and his second wife Sally Newman, the appellee, on a parcel of land that was contiguous, less than 160 acres and not in any municipality. Mr. Newman was survived by his wife Sally and seven adult children.
Of course, homestead property is not subject to devise if the owner is survived by spouse or minor children;[2] it is excluded from the owner’s estate and descends to the decedent’s lineal descendants subject to the widow’s life estate.[3] Conversely, real property not homestead is included in the estate and is subject to the widow’s dower interest.[4]
Appellant, decedent’s daughter by a former marriage, petitioned to remove from the administration of his estate the entire tract of real property on which the decedent resided at his death. The probate court granted the petition. Subsequently appel-lee timely moved for rehearing and presented an affidavit from the county tax collector to the effect that Mr. Newman applied for and received a homestead tax exemption on all of the contiguous property on which he resided from 1955 until 1968, when he applied for and received a homestead tax exemption only on one lot of land which was a small part of the larger parcel of land. Based solely on this affidavit, the probate court rescinded its prior order and found that only the one lot was exempt *142 homestead property, based on a finding that the affidavit was evidence of the intent of the decedent to establish a homestead on the lot on which his residence was located and that “the wife continued to live there as the homestead and the children acquiesced in this by treating this particular lot as the homestead for better than ten years since the estate has been open.”
There is no question but that prior to 1968 the entire contiguous tract on which the decedent resided at the time of his death constituted his homestead. The only question is whether the decedent abandoned, for homestead purposes, those portions of his property beyond the one lot and whether the tax collector’s affidavit as to the decedent’s claim of a homestead tax exemption only as to that lot in 1968 is legally sufficient evidence of a homesteader’s intent to abandon. We find it is not and reverse.
The homestead character of a piece of property is not created by, nor is it dependent upon, any general or specific mental intent on the part of the owner to create or maintain a certain piece of property as his homestead, but arises and attaches from the mere existence of certain facts in combination in place and time. Neither is the existence of the homestead in any manner dependent on claiming or failing to claim the entitlement to an exemption from ad valorem taxes that the legislature has by statute conferred on persons who in good faith permanently reside on real property in which they have a certain ownership interest.[5] Since a homesteader may terminate the homestead nature of a parcel of land by making a good faith change in his principal place of permanent residence and since one’s place of residence does involve one’s intention, a homesteader’s intention to abandon a particular parcel as his permanent residence and re-establish his permanent residence elsewhere could be very relevant in a particular case. However, there is no suggestion or argument in this case that Mr. Newman did any act with the intent to abandon his home on this tract of land and re-establish one elsewhere.
Because of the beneficial aspects of homestead property relating to exemption from forced sale, and certain tax exemptions, it is commonly believed that homestead status is all benefit in favor of the homesteader. This is not correct in that the constitutional limitation on the homesteader’s right to devise his homestead property constitutes a substantial restriction on his right to otherwise make a testamentary disposition of his property according to his every desire and direction. That restriction, coupled with the statutory provision for his surviving spouse to take a life estate in it with a vested remainder to his lineal descendants in being at the time of his death, constitutes a valuable right in the surviving spouse and heirs but not in the homesteader. While it is true that the head of a family who holds title to homestead property may do acts [6] which will defeat the legitimate expectancy rights of his spouse and children, nevertheless they do not exactly hold their rights at his grace and he may neither will their rights away by formal devise nor destroy them by a mere express or implied indication of his desire, choice, determination or intention. He may not “abandon” the rights of his spouse and children. Therefore the intention of the homesteader that certain property be, or not be, his homestead for the purpose of its descent and distribution as provided by law is immaterial to the inquiry as to whether certain property did in fact constitute his homestead at his death. Similarly, whether the widow continues to live there after the owner’s death is immaterial to that inquiry. Likewise, it is immaterial whether the children acquiesce in the widow’s possession, *143 since her possession is consistent with her life estate in the homestead. Also the widow’s possession over merely a part of the homestead, such as the residence and lot in this case, is no evidence that the greater parcel was not homestead because her awareness of her homestead rights are not essential to their existence. There is no claim of estoppel involved in this case. Since actual residence on the property is required to properly claim a homestead tax exemption and such residency is one fact relevant to a determination of the homestead character of a parcel of land, a claim of the tax exemption as to a parcel may be relevant to a claim that parcel is, or was, homestead property; but the reverse implication is fallacious and the failure to claim tax exemption is no evidence that property is not in fact homestead, because that failure is also consistent with many other reasonable explanations. The most obvious is that because the tax exemption is limited to a dollar amount, if the assessed value of the residence and a smaller parcel exceeds the amount of the applicable exemption there is no tax advantage to also include in the claim of exemption other contiguous property that may in fact constitute part of the total homestead property.
Even if the tax collector’s affidavit constituted admissible evidence, neither it nor its contents nor the other matters the trial court considered constituted evidence material to a relevant inquiry in this case and accordingly they are legally insufficient to support the order on the motion for rehearing vacating the court’s earlier order. Therefore the order on rehearing is reversed and the prior order of May 30, 1980, is reinstated.
REVERSED and remanded for further proceedings consistent with this opinion.
SHARP, J., concurs.
DAUKSCH, C. J., dissents with opinion.

. The decedent’s will purports to devise his entire estate equally to his wife and seven children. Its effect has not been raised in this case. See In re Estate of McCartney, 299 So.2d 5 (Fla.1974); J. Maines and D. Maines, Our Legal Chameleon Revisited: Florida’s Homestead Exemption, 30 Fla.L.Rev. 227, 276 (1978).

. Art. X, § 4(c) Fla.Const.; § 732.4015, Fla. Stat. (1981), formerly § 731.05, Fla.Stat. (1968). This provision of the constitution was amended in 1972 to permit the homestead to be devised to the owner’s spouse if there are no minor children. This amendment was after Mr. Newman’s death.

. § 732.401, Fla.Stat. (1981), formerly § 731.27, Fla.Stat. (1968).

. § 731.34, Fla.Stat. (1967). This statute was repealed in 1974 and replaced by § 732.201 et seq., Fla.Stat. (1974), giving a surviving spouse an elective share of a decedent’s estate. This change was also after Mr. Newman’s death.

. See § 196.031, Fla.Stat. (1981).

. For example, the homesteader can change his residence to a place off of the property or do some act to change his status as the head of a family or may alienate the homestead by mortgage, sale or gift in the manner permitted by the constitution or permit title to be lost by forced sale for non-payment of taxes and assessments or of purchase, improvement or repair obligations or for labor performed on the realty. See Art. X, § 4(a), Fla.Const.